STATE *v.* MAY H. CAREY, HOWARD J. CAREY, and JAMES A. CAREY.

*(April* 8, 1935.)

LAYTON, C. J., HARRINGTON and RICHARDS, J. J., sitting.

*P. Warren Green,* Attorney-General, *C. Edward Duffy* and *Caleb M. Wright, Deputy Attorneys-General,* for the State.

*Frederick P. Whitney* for the defendants.

Court of Oyer and Terminer for Sussex County, April Term, 1935.

Indictment for murder of the first degree, No. 29, February Term, 1935.

LAYTON, C. J., delivering the opinion of the Court:

It is not contended that there was evidence upon which a verdict of manslaughter properly could have been based, nor that the jury were not instructed that they could find, subject to the law and the evidence, a verdict of guilty of manslaughter; but it is argued that the statement made to the jury, that there was no evidence upon which a verdict or verdicts of manslaughter could be founded, was tantamount to a withdrawal of that issue from the consideration by the jury, and, therefore, error on two grounds:

1. That the instruction was in violation of *Section* 4826 of the *Revised Code of* 1915, which is,

"A person indicted for murder may be found guilty of either degree of murder, or of manslaughter; * * * and such conviction shall be as effectual as if the indictments had been for the crimes whereof the person indicted shall thus be found guilty."

2. That the instruction constituted a comment on the facts, prohibited by *Section* 22, *Art.* 4 *of the Constitution,* which reads,

"Judges shall not charge juries with respect to matters of fact, but may state the questions of fact in issue and declare the law."

With respect to the first contention the argument is that the statute confers upon the jury, in a trial upon an indictment for murder of the first degree, a right as distinguished from a mere power, to render any one of the

verdicts named in the statute, and necessarily, a right in every defendant in such indictment to have every degree of guilt presented to the jury, regardless of the state of the evidence.

This contention might well be denied, and without much discussion, by saying that the statute, if it needs be construed as contended for, was, in fact, complied with, for the reason that it was distinctly left to the jury whether their verdict should be of murder of either degree or of manslaughter, and that, while the statement that there was no evidence to support a verdict of manslaughter was pointed and strong, it was not a denial of their right, if it be a right, to find such verdict. In other words, the charge was not imperative. See *Shaffner v. Com.*, 72 *Pa.* 60, 13 *Am. Rep.* 649.

This view finds support in *State v. Brinte, et al.*, 4 *Penn.* 551, 58 *A.* 258, where, there being no claim that the killing was justifiable or excusable homicide, or manslaughter, the jury were told that they might find a verdict of either degree of murder or of manslaughter, but were instructed that it was their duty to determine whether the slaying was of a higher grade than manslaughter, and whether the prisoners were guilty of murder of the first degree or murder of the second degree. See, also, *State v. Miller, et al.*, 9 *Houst.* 564, 32 *A.* 137.

The questions raised, however, are vitally important ones to these prisoners. Furthermore, the public interest in the administration of the criminal law seems to demand that these questions be answered and doubts set at rest insofar as this court may be able to settle those doubts.

■■ The statute in question was enacted in 1826, and is first found, in approximately the same language as it now exists, in *Section 10, Ch. 362, Vol. 6, Laws of Delaware.*

The division of the crime of murder into two degrees was by *Section 2842 of the Code of 1852*; and *Section 2845*

of that revision, now *Section* 4700 of the present *Code*, is that

"upon the trial of an indictment for murder, the jury, if they find the defendant guilty, shall inquire, and by their verdict ascertain whether he be guilty of murder of the first or second degree."

These statutes have never been construed although the first of them was in force at the time of the earliest reported homicide case, and what is now *Section* 4700 very shortly thereafter.

An examination of the reported cases of homicide in 5 *Harr.,* 1 *Houst. Cr. Cas.,* 9 *Houst.,* and 1*st* and 2*nd Marvel,* covering a period from 1851 to 1893, shows very clearly that neither statute was regarded as conferring upon the jury a right to consider and determine degrees of guilt regardless of the state of the evidence. In *State v. Windsor,* 5 *Harr.* 512, tried in 1851, the defense was insanity, and Judge Harrington did not hesitate to say that the offense was murder, if it was anything at all, and that voluntary and unprovoked homicide, by the use of a deadly weapon, could never be manslaughter of any degree, there being, at that time, statutory degrees of manslaughter.

Likewise in *State v. Evans,* 1 *Marv.* 477, 41 *A.* 136, tried in 1893, where the indictment was for murder by poisoning and the defense an alibi Chief Justice Lore, with equal emphasis, said that the prisoner was either guilty of murder of the first degree, or he must be acquitted, and there was no intermediate ground.

Between these two trials occurred *State v. Danby,* 1 *Houst. Cr. Cas.* 166, 167; *State v. Goldsborough,* 1 *Houst. Cr. Cas.* 302; *State v. Boice,* 1 *Houst. Cr. Cas.* 355; *State v. West,* 1 *Houst. Cr. Cas* 371; *State v. O'Niel,* 1 *Houst. Cr. Cas.* 468; *State v. Thomas,* 1 *Houst. Cr. Cas.* 511, and *State v. Reidell,* 9 *Houst.* 470, 14 *A.* 550. In each of these trials the court did not hesitate to limit the issue to that of guilty as charged or not guilty.

*State v. Becker,* 9 *Houst.* 411, 33 *A.* 178, and *State v. Miller,* 9 *Houst.* 564, 32 *A.* 137, do not point to any contrary view of the statutes. In the first mentioned the facts are meagerly reported. The defense seems to have been defense of his property. The jury were told that their verdict might be guilty of either degree of murder or of manslaughter, but they were distinctly told that the idea prevalent that a jury could do as they please in a capital case was erroneous; that they had the power to do so was true, but they had no right to do so.

In the *Miller Case* the defense was an alibi, but all the issues were submitted to the jury, although they were told that the case was not one of voluntary or involuntary manslaughter. However, in this case, the proof of the *corpus delicti* was doubtful, and there was no direct evidence of the manner of killing.

It is true, of course, that during this period, it frequently happened that all the degrees of guilt were submitted to the jury for their determination, and properly so, where the evidence was purely circumstantial, where there was evidence of an altercation or provocation, intoxication, want of malice, or where the defense was self-defense or defense of property.

So, we have during this long period of time ample evidence, not from direct words but from what actually was done, that the courts of that time did not regard either statute as conferring any right whatsoever upon the jury to decide degrees of guilt as to which there was no evidence.

*State v. Cole,* 2 *Penn.* 344, 45 *A.* 391, seems to mark a departure. There the defense was insanity, yet the court submitted to the jury the questions of murder of either degree and of manslaughter. Likewise in *State v. Brinte, et al., supra,* where the facts showed a deliberate and premeditated killing, and the defendants produced no evidence.

In *State v. Roberts,* 2 *Boyce* 140, 78 *A.* 305, the evidence was wholly circumstantial, and the defense was an alibi. The court said it was its duty to define the degrees of murder and manslaughter because of the statute. *Section 4826, supra.* But, in *State v. Krakus,* 5 *Boyce* 326, 93 *A.* 554, where the defendant contended only that he was not guilty of any crime greater than murder of the second degree, the issues were limited to the two degrees of murder. In *State v. Prettyman, et al.,* 6 *Boyce* 452, 100 *A.* 476, the defense was an alibi, yet all of the issues were submitted.

Since the *Cole Case,* with the exception of the *Krakus Case,* all the degrees of guilt have been submitted to the jury, notwithstanding the defense raised, or the state of the evidence. Sometimes, the court as in the *Roberts Case,* has referred directly to the statute, more often not. Sometimes the jury has been charged, as in the *Becker Case,* that the verdict should always be warranted by the evidence, but very frequently this warning has been omitted.

From this examination of the cases, the purpose and meaning of the statute, *Section* 4826, may be said to be left in doubt, but, we think, the doubt or uncertainty is more apparent than real. If the statutes were meant to confer a right upon the jury to render whatever verdict they might please regardless of the evidence, then the former court of Oyer and Terminer, during all the years up to 1893, was entirely and hopelessly in error. It is true that no writ of error lay to that court. It was a court of last resort; but we are wholly unwilling to believe that the able and conscientious judges who composed that court for half a century were so blind to the real meanings and purposes of the statutes, and so indifferent to the rights of persons faced with the possibility of the death penalty and to the rights of juries who were to decide their fate, as to remove from their consideration issues required by law to be submitted to them. The settled practice of that court is en-

titled to the highest respect. See *Daniels v. State,* 2 *Penn.* 586, 48 *A.* 196, 54 *L. R. A.* 286.

Nor are we convinced that the courts of a later day, in spite of the statements occurring in charges to juries, which, on their face, seem to point in that direction, meant to hold that in all circumstances, by reason of the statutes all of the degrees of guilt, despite the state of the evidence, must be submitted to the jury.

We are more of the opinion that since the adoption of the present constitution which prohibits comment on the facts, the courts had some apprehension that a limitation of the issues might be regarded as a comment on the facts.

It seems sufficiently clear to us that the wording of the statute, "and such conviction shall be as effectual as if the indictments had been for the crimes whereof the person indicted shall thus be found guilty," is so indicative of its intent and purpose as to render construction unnecessary.

Anciently, where the killing was proved, but the circumstance showed it to have been a misfortune, or to have arisen in self-defense, the jury found the special matter, and left the court to judge of its effect. 3 *Chitty Cr. Law* 739. And the English courts have rejected verdicts of manslaughter where the evidence clearly showed the offense to be murder. 1 *Russell Crimes* 773. We are of the opinion that the purpose of the statute was to enable the jury, in case the proof was not sufficient to convict of the particular crime charged, but was sufficient to convict of a lesser offense, to find the defendant guilty of the lesser offense necessarily included in the one charged.

The purpose of the statute was not to invest juries in criminal cases with the right arbitrarily to disregard the evidence and the principles of law applicable to the accusation. From which it follows that the statute confers no right upon a defendant to have submitted to the jury an issue as to which there is no supporting evidence. A de-

fendant has no constitutional or statutory right to a compromise verdict, nor should such verdicts be encouraged.

■ And we think the purpose of the statute, *Section 4700 of the Revised Code of 1915*, was to prevent the accused from being sentenced to death without a special finding of the jury of murder of the first degree, and was not to give to the jury a discretionary right to find a degree of guilt regardless of the evidence.

Limitation of space forbids a review of the authorities. The cases cited, decided upon statutes substantially like our own, are convincing. *Sparf v. U. S.*, 156 *U. S.* 51, 715, 15 *S. Ct.* 273, 39 *L. Ed.* 343; *State v. Saccoccio*, 50 *R. I.* 356, 147 *A.* 878; *State v. Cianflone*, 98 *Conn.* 454, 120 *A.* 347; *State v. Marx*, 78 *Conn.* 18, 60 *A.* 690; *State v. Chapman*, 103 *Conn.* 453, 130 *A.* 899; *State v. Young*, 67 *N. J. Law* 223, 51 *A.* 939; *State v. Zeller*, 77 *N. J. Law* 619, 73 *A.* 498; *Carr v. State*, 45 *Fla.* 11, 34 *So.* 892; *People v. King*, 27 *Cal.* 507, 87 *Am. Dec.* 95; *Clark v. State*, 169 *Ark.* 717, 276 *S. W.* 849, 855; *State v. Birbiglia*, 149 *La.* 4, 88 *So.* 533; *State v. Spivey*, 151 *N. C.* 676, 65 *S. E.* 995, overruling *State v. Gadberry*, 117 *N. C.* 811, 23 *S. E.* 477; *Demato v. People*, 49 *Colo.* 147, 111 *P.* 703, 35 *L. R. A.* (*N. S.*) 621, *Ann. Cas.* 1912A, 783; *State v. Flory*, 203 *Iowa* 918, 210 *N. W.* 961; *Bandy v. State*, 102 *Ohio St.* 384, 131 *N. E.* 499, 21 *A. L. R.* 594; *Thornton v. Conn.*, 24 *Grat.* (65 *Va.*) 657; *People v. Repke*, 103 *Mich.* 459, 61 *N. W.* 861; *State v. McPhail*, 39 *Wash.* 199, 81 *P.* 683; *Note* 21 *A. L. R.* 603; 30 *C. J.* 398, 414.

■■ A court must proceed circumspectly in refusing to submit an alleged issue to the jury, or in stating that there is no testimony in support thereof. Such action demands a high degree of caution and judgment. Where there is some evidence, even if it be only that of the defendant himself, or if some fact or circumstance appears from which an inference reasonably and fairly may be drawn,

pointing to a degree of guilt lower than that specifically charged, the weight of the testimony is for the jury, and it would be error to refuse to submit the issue. Likewise where there is no eye witness to the killing and the evidence is purely circumstantial, a situation is presented which may demand the submission of the several degrees of guilt.

But where there is no evidence, and no fact or circumstance from which an inference justly may be deduced, tending to prove an offense of lesser degree than the one specifically charged, the court commits no error in withdrawing from the jury's consideration an alleged issue with respect to which there is no supporting evidence.

Here the fact, manner and purpose of killing were amply proved. There was no evidence tending in the slightest degree to show provocation. By the confessions of the several prisoners and by direct testimony the killing was deliberate and wilful murder, and nothing else. The charge was more favorable to the prisoners than was justified by the testimony, and more than they properly could have requested.

The second contention is, that the statement of the court that there was no evidence to support a verdict of manslaughter was a comment on the facts in violation of the constitutional prohibition.

By the very language of the Constitution judges "may state the questions of fact in issue," and we think this necessarily means that supposed issues, but with respect to which there is no supporting evidence, may be withdrawn from the jury. It is the duty of the court to render all proper aid to the jury by clarifying the issues; and frequently the best method of clarification is to inform the jury that certain alleged issues are not supported by any

evidence, and, hence, are not issues at all, for, in such case, the court does but state the law.

In *Truxton v. Fait & Slagle Co.*, 1 *Penn.* 483, 42 *A.* 431, 437, 73 *Am. St. Rep.* 81, the Supreme Court said,

"And we think that a statement by a judge, in charging the jury, of matters of fact which are uncontroverted and not in dispute nor in issue, where such statement may be material for the proper elucidation or application of the legal principles involved, would not be in conflict with the provisions of *Section* 22 of *Article* 4 of our lately amended constitution."

In *State v. McPhail*, 39 *Wash.* 199, 81 *P.* 683, 684, *supra*, upon this question, the Court said,

"It seems to us that counsel labor under an entire misapprehension as to the purpose and effect of this constitutional provision. It relates only to the manner of conducting trials and submitting questions of fact to juries, and does not limit the power of the courts in the determination of questions of law. In this as in all other jurisdictions the court must determine the issues to be submitted to the jury from the pleadings and proofs, and in making such determination it decides matters of law, and not matters of fact. If the court improperly withdraws an issue from the consideration of the jury, its ruling is erroneous, not because it is a comment on the facts, or a charge with respect to matters of fact, in violation of the provision quoted, but because it deprives the parties of a trial by jury, in violation of *Section* 21 or *Section* 22 of *Article* 1 of the *Constitution*, which provide that the right of trial by jury shall remain inviolate. * * * The provision upon which counsel rely applies to both civil and criminal cases, and, if they are correct in their contention, this court has been in error throughout its entire existence in holding that whether there is any testimony to support a cause of action or a defense presents a question of law for the determination of the court, and not a question of fact for the jury. The position taken by counsel is that the trial court must submit every issue raised by the pleadings to the jury, regardless of the state of the testimony or the absence of all testimony. This contention finds no support in our Constitution or elsewhere, and cannot prevail."

In *Clark v. State, supra*, in disposing of a contention that an instruction to the jury that they must convict or acquit of murder in the first degree and no other offense, was a charge upon the facts, the court said,

"Under the provisions of our Constitution above referred to, as well as under the common law, it is the duty of the court to instruct

the jury upon the law, and it is the duty of the jury to accept the ruling and be guided by it. As stated in *Jones v. State* [52 *Ark.* 345, 12 *S. W.* 704], *supra*, the trial court should in no case indicate an opinion as to what the facts establish; but in properly giving the law the court must of necessity determine whether there is any evidence at all justifying a particular instruction. The right and power of juries in criminal cases should not be confused."

In *People v. King, supra*, it was said,

"On the other hand, if there was a total absence of all testimony as to such facts and circumstances as would under the law, reduce the offense from murder to manslaughter, and the instruction is to be understood as declaring such to be the case, then it was not erroneous, because Judges, although not allowed to charge juries with respect to matters of fact may state the testimony and declare the law. *Const. Art.* 6, § 17."

Long ago, in *State v. Jeandell, et al.,* 5 *Harr.* 475, it was said that wherever a question depends on weight of evidence, the court uniformly submits it to the jury. If no evidence be offered on the point, the Court decides it; for there is nothing to leave to the jury.

 A comment or charge on the facts is some expression by the court directly or indirectly conveying to the jury the court's estimation of the truth, falsity or weight of testimony in relation to a matter at issue. Where there is a total absence of evidence upon a matter, and no fact or circumstance from which a legitimate inference can be drawn in relation to that matter, there can be no issue, for there is no question of fact for the jury to decide. In such case a statement by the court in relation to the matter that there is no issue for the reason that there is no evidence to support it, is not a comment on facts.

The motion in arrest of judgment and for a new trial is denied.