CARL NELSON, Defendant Below, Appellant, v. THE STATE OF DELAWARE, Plaintiff Below, Appellee.

(*June* 27, 1956.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*H. James Conaway, Jr.* (of Morris, James, Hitchens and Williams) for appellant.

*Albert J. Stiftel,* Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 3, 1956.

SOUTHERLAND, C. J.:

The principal question in this case concerns the degree or quantum of proof required to establish the *corpus delicti* apart from the defendant's confession.

The facts are these:

Anne Rose Parsons, a married woman, lived with her husband and children at Kennett Square, Pennsylvania. In 1952

she met the defendant, and an illicit attachment resulted. At the time with which we are concerned she was employed at the Kennard-Pyle department store in Wilmington. She was a very good, reliable worker.

On April 12, 1954, she left the store about 3:18 p. m. for her afternoon rest period. She appeared to be in good health. She went to the Hotel Olivere (about a block away), where the defendant on April 7th had taken a room in the name of Mr. and Mrs. C. Nelson. She met the defendant. Exactly what happened thereafter is known directly only through statements made later by Nelson, but it is certain that Mrs. Parsons met her death sometime during the afternoon.

Nelson appears to have left the room about four o'clock. He walked around, visited a bar, and returned about midnight. He spent the night in the room with the body.

The next day he left the hotel about nine o'clock. Before leaving he twice told the maid that she need not do anything to his room. He spent the day visiting various bars.

About 7:30 p.m. Police Headquarters received a telephone call from an unknown man who stated that there was a dead body in Room 26 of the Hotel Olivere. The call was made by Nelson. A patrolman was sent to the room. He found the unclothed body of Mrs. Parsons upon the bed. He observed what seemed to be several blotches around her neck. He notified the Detective Division, and several officers came to the room. Lieutenant Miller observed several bruise marks on the throat. The room showed no sign of a struggle.

The medical evidence for the State was based upon an examination and autopsy performed by Dr. Casella, the pathologist at one of the Wilmington hospitals, about 9:00 p. m. on April 13th. He found two bruise marks on the side of the neck. The muscles on the side of the neck were hemorrhagic in appearance. He concluded that external pressure had been applied to the skin of the neck. He fixed the time of death about thirty

hours before his examination. The coroner's physician was of the same opinion. In Dr. Casella's opinion, his findings were consistent with death by strangulation. From his findings alone, he could not say definitely that death resulted from this or any other specified cause. His findings were also consistent with death from acute alcoholism, inhalation of poisonous gases, epilepsy, and possibly other causes. Later examination of a blood sample for alcohol eliminated alcoholism as a cause. It also was shown that there was no illuminating gas furnished to the room.

The State also introduced evidence of statements made by the defendant to police officers and others, the purport of which was that he had killed Mrs. Parsons, by choking or strangling her. On the evening of April 13th Nelson said to the barmaid at the Hotel Olivere: "I did something and you are going to hear it quite a bit in the next few days." During the same evening Nelson was in a nearby cafe. Some other customers were talking about the death of a woman at the Olivere. Nelson said to the proprietor: "Did you hear about the people talking about the woman getting shot and stabbed * * *?" The proprietor said "yes", and Nelson said: "Well, I think I strangled her. * * * She has been dead since yesterday afternoon."

The police were notified, and Nelson was arrested. Lieutenant Miller told him he was under arrest for murder and that he did not have to say anything. While Nelson was riding in the police car, he said: "I told her I would do it when she least expected it." Questioned at the police station he made a full statement of his relations with the deceased woman. The manner of her death he described as follows:

"We were talking and then I don't know exactly what happened. I was leaning over her kissing her, the next thing I knew I had my hands around her throat and was choking her. Her face was all flushed. I sat up for a while and couldn't realize what happened. I felt her pulse and there was none. There was no heart beat. I realized then that she was dead. I looked at the clock and it was ten minutes to four. I figure I must have choked her about ten minutes."

On April 14 Nelson was brought before the Municipal Court for commitment. The court refused to proceed unless the defendant had the advice of counsel, and asked Joseph A. L. Errigo, Esquire, a member of the bar, to advise him. Mr. Errigo cautioned Nelson to say nothing. Notwithstanding this advice Nelson subsequently made a second statement to the police, to the effect that he had expected to marry Mrs. Parsons but had learned from her on the afternoon of April 12th that she was not getting a divorce, although he had been giving her money to put aside for this purpose.

Nelson was indicted and tried for first degree murder, and convicted of manslaughter.

During the trial and after verdict, Nelson's counsel raised, in various ways, the question of law that he now brings here for review. He contends that under the law the *corpus delicti* must not only be proved beyond a reasonable doubt upon all the evidence in the case; it must be so proved, he says, by evidence apart from the confession. The trial court rejected this contention and charged the jury as follows:

"In determining whether or not the *corpus delicti,* an essential element of the State's case, has been proved beyond a reasonable doubt, you may consider the confessions of the defendant as admitted in evidence together with all other facts that have been proved or established, but in deciding this question, we must say to you that the confessions, standing alone, in the absence of other corroborating testimony, are not sufficient evidence upon which to sustain a conviction in this case."

Upon a motion after verdict for a judgment of acquittal, the trial court carefully examined the law upon the matter and adhered to the view expressed in the charge. The correctness of that view we must now determine; but before discussing it we must deal with an objection to the medical testimony.

▪ It is said that all of Dr. Casella's testimony is founded upon a "history" furnished him by other persons and hence his

finding that the cause of death was consistent with strangulation is based on hear-say and is inadmissible. This contention is earnestly pressed. We have carefully examined the record. Relying not only upon his examination and autopsy, but also upon information received from other persons, Dr. Casella reported the cause of death as "anoxia [lack of oxygen], due to strangulation". But his limited finding that the cause of death was consistent with strangulation did not rest upon any history supplied by others. Interrogated by the court specifically upon this point, he testified that this finding did not involve any case history. It is true that there are other portions of his testimony upon that point that might be thought somewhat confusing; but it is clear that it was proper to allow the finding to remain in evidence. Its weight was for the jury. The trial court considered defendant's contention on this point, both during the trial and upon the subsequent motion, and rejected it. We think that it was right.

We recur to the principal question: Was there sufficient proof to establish the *corpus delicti?*

■ Though questioned by Wigmore, the prevailing American rule is that proof of the *corpus delicti* requires (1) proof of the injury, death or loss, according to the nature of the crime, and (2) proof of criminal means as the cause. 7 *Wigmore on Evidence,* § 2072. This is the rule in Delaware. See the cases hereafter cited.

■ It is also the prevailing rule in this country that a confession alone is insufficient to prove the *corpus delicti,* and that some proof of the *corpus delicti* is required in addition to the confession. 7 *Wigmore on Evidence,* § 2071; 2 *Wharton's Criminal Evidence,* § 640; *State v. Kehm,* 9 *Terry* (48 *Del.*) 372, 103 *A.* 2d 781; *State v. Miller,* 9 *Houst.* 564, 32 *A.* 137; *State v. Blackburn,* 7 *Penn.* 479, 74 *A.* 536.

The evidence of the *corpus delicti* in this case, apart from the confession, may be summarized as follows:

■ There was a sudden unexpected death of a woman apparently in good health. There were marks of violence upon the throat. The body was found in a room that had been taken by a man for himself and wife, and occupied by him several days prior to April 12th. The chambermaid was twice told on April 13th by the occupant of the room that she need do nothing to it. No physician was called, and no one was notified of the death for more than twenty-four hours. The notification was made by a man who did not identify himself.

Death was proved, and foul play was strongly indicated.

On the other hand, the uncertain nature of the medical testimony warrants the conclusion that the above evidence, considered alone, did not prove death by criminal means beyond a reasonable doubt.

The question therefore is: What degree or measure of proof *aliunde* is required?

Defendant insists that the independent proof must in itself establish the *corpus delicti* beyond a reasonable doubt. Some expressions can be found, both in text books and in reported cases, supporting this contention. See, for example, 2 *Wharton's Criminal Law*, § 359; *Clay v. State*, 176 *Ga.* 403, 168 *S. E.* 289; *Pitts v. State*, 43 *Miss.* 472. And some language in the charge to the jury in *State v. Miller, supra*, may be read as adopting this rule. See 9 *Houst.* 573, 32 *A.* 137.

But the great weight of authority is to the contrary. The accepted rule is that it is enough if there is some evidence of the *corpus delicti* corroborating the confession, provided that all the evidence taken together proves the *corpus delicti* beyond a reasonable doubt. 7 *Wigmore on Evidence*, § 2073; 2 *Wharton's Criminal Evidence*, § 640; *Jones v. State, Md.*, 52 *A.* 2d 484, 488. A recent Delaware case follows this rule. *State v. Kehm, supra*. The cases are collected in an article in 103 *U. of Pa. Law Review* 638.

 Upon the question of the quantum of independent proof required, the decisions are not harmonious. 2 *Wharton's Criminal Evidence*, § 641. The required measure of independent proof has been variously stated as a preponderance of the evidence, as *prima facie* evidence, and as some quantum less than *prima facie*. In many jurisdictions no specific measure of proof is required; there must be "some" independent proof. See the discussion in the article above cited. Judge Layton's opinion in the *Kehm* case appears to put Delaware in the last category.

In that case it is said [9 *Terry* (48 *Del.*) 372, 103 *A.* 2d 782]:

"* * * the quantum of proof *aliunde* should be that which, though not in itself conclusive, when taken in connection with the confession, establishes the *corpus delicti* beyond a reasonable doubt."

We are in accord with this holding. We see no reason to import into the administration of the criminal law a special measure of proof for the corroborating evidence required. Hair-splitting distinctions and confusion in the minds of jurors are apt to be the result. The defendant is sufficiently protected by requiring proof of the *corpus delicti* beyond a reasonable doubt upon all the evidence taken together, provided that some evidence apart from the confession is adduced. The danger of an occasional false or untrustworthy confession may exist, and it is for this reason that some independent proof of the *corpus delicti* is required. But that there is any real necessity to prescribe a special measure of such proof we cannot believe. Compare the comments of Judge Learned Hand in *Daeche v. United States*, 2 *Cir.*, 250 *F.* 566, 571, with respect to the necessity for any independent proof.

The question is adequately considered and discussed in the opinion below upon the motion after verdict, with which we agree. The charge to the jury was a correct statement of the law.

We find no error in the record, and the conviction and judgment are affirmed.