Richard J. McGUIGAN and Warlow J.
Hampton, Defendants Below,
Appellants,

v.

STATE of Delaware, Plaintiff Below,
Appellee.

Supreme Court of Delaware.

July 30, 1971.

James F. Kipp, Asst. Public Defender, Wilmington, for appellants.

John G. Mulford, Deputy Atty. Gen., Wilmington, for the State.

WOLCOTT, Chief Justice, and CAREY and HERRMANN, Justices, sitting.

WOLCOTT, Chief Justice.

This is an appeal from convictions of involuntary manslaughter. Three points are raised by the appellants, viz.: (1) that error occurred when the trial judge ruled that each of the numbered statements in the indictment should be treated as a separate count and that proof of any one of them was sufficient to support a verdict of guilty; (2) that error occurred when the trial judge ruled that the State had established the *corpus delicti*; and (3) that error occurred when the trial judge refused to exclude evidence of the drinking of the appellant McGuigan in the absence of evidence that he was intoxicated.

The State produced evidence to establish the following: McCollum and Garcia, friends of McGuigan, picked him up at work about 6:00 p. m., January 10, 1969 in Garcia's car. They proceeded to Garcia's house where McGuigan had one or two beers. After a short interval, the three of them went to the Gay Nineties Tavern. They then went to Monte Vista where they stayed until after 11:00 p. m. McGuigan consumed one or two beers. While at Monte Vista McGuigan met Helen Brown.

Somewhere around 11:30 p. m., all four of them left Monte Vista and took McCollum and Garcia home. McGuigan drove Garcia's car because he was the soberest of the four. McGuigan, after dropping Garcia at home, kept Garcia's car with his permission.

McGuigan and Helen Brown returned to Monte Vista where McGuigan had two more beers. At Monte Vista Helen Brown met Warlow J. Hampton, a co-appellant, and an old acquaintance. The three of them left Monte Vista at about 2:05 a. m. to go to the Sherwood Diner for breakfast. Helen Brown rode in Hampton's car which was followed by McGuigan driving Garcia's car.

The two cars proceeded along Route 41 near Hockessin to a point about two-and-one-half miles from the site of the accident giving rise to this criminal charge. At this point, McGuigan passed the Hampton car in the middle of a passing zone at approximately ninety miles per hour. About one-and-a-half miles farther on Hampton passed McGuigan, also at approximately ninety miles per hour. As he passed McGuigan he saw before him a tractor-trailer closely approaching, and also ·a blinking yellow light.

Hampton cut in to the right and began to decelerate. This maneuver caused McGuigan to lose momentary control of his car and to swing out of his lane of travel. McGuigan ran head-on into the car of the victim, Essick, which neither McGuigan nor Hampton saw prior to the accident. The victim, Essick, after the accident was found dead upside-down on the back seat of his car.

On these facts, the jury found both McGuigan and Hampton guilty of involuntary manslaughter. McGuigan was sentenced to pay a fine of five hundred dollars, to a suspended sentence of two years' imprisonment, and was placed on probation for a period of twenty years, during which period he was not to drive a motor vehicle. Hampton was sentenced to pay a fine of

five hundred dollars, to a suspended sentence of one year, and was placed on probation for a period of ten years, during which period he was not to drive a motor vehicle. These appeals followed.

The first point made by the appellants is that the trial judge erred in ruling that each of the numbered allegations in the indictment constituted a separate count and that proof of any one of them would be sufficient to support a verdict of guilty of manslaughter.

The indictment in this matter in full is as follows:

"The Grand Jury charges RICHARD JONATHAN McGUIGAN and WARLO JAMES HAMPTON with the following offense, a felony:

"MANSLAUGHTER, in violation of Title 11, Section 575 of the Delaware Code of 1953.

"RICHARD JONATHAN McGUIGAN and WARLO JAMES HAMPTON on or about the 11th day of January, 1969, in the County of New Castle, State of Delaware, drove their respective automobiles in a southerly direction on Newport Gap Pike, State Route 41, in violation of the law in such cases made and provided in that:

"1. With a reckless disregard for safety of persons on said highway, RICHARD J. McGUIGAN and WARLO J. HAMPTON did not maintain a proper lookout.

"2. With a reckless disregard for safety of persons on said highway, RICHARD J. McGUIGAN and WARLO J. HAMPTON failed to maintain proper control over their respective vehicles.

"3. RICHARD J. McGUIGAN and WARLO J. HAMPTON drove their respective vehicles on the highway known as State Route 41 at a rate of speed greater than is reasonable and prudent under the conditions then existing, to wit: while approaching a hill on said highway known as State Route 41, in violation of Title 21, Section 4168(a) of the Delaware Code of 1953.

"4. Richard J. McGuigan and Warlo J. Hampton did then and there drive their respective vehicles on said highway with a willful and wanton disregard for the safety of persons and property on said highway, in violation of Title 21, Section 4175 of the Delaware Code of 1953.

"5. Richard J. McGuigan and Warlo J. Hampton drove their respective vehicles at a speed in excess of 50 miles per hour, the legally posted speed limit in that area, in violation of Title 21, Section 4169(b) of the Delaware Code of 1953.

"6. The said Richard J. McGuigan did then and there drive his vehicle on said highway while under the influence of intoxicating liquor, in violation of Title 21, Section 4176 of the Delaware Code of 1953.

"7. That the said Richard J. McGuigan and Warlo J. Hampton did agree to an automobile race; in pursuance with said agreement, the said Richard J. McGuigan and Warlo J. Hampton were driving separate automobiles, being driven, over and along Newport Gap Pike, State Route 41, in violation of Title 21, Section 4172(a).

"As a result of the motor vehicles being driven with culpable and gross negligence, the automobile being driven by Richard J. McGuigan struck a certain automobile in which one W. Earl Essick was then and there the operator, resulting in the death of said W. Earl Essick, and being the proximate cause of the death of said W. Earl Essick."

Appellants argue that since the indictment charges each and every one of the items, "it is incumbent upon the State to prove each and every one of those elements" since there is but one conclusory paragraph charging the crime.

■ We think, however, the appellants are being unduly technical. There is nothing to prevent prescribing by statute a crime which may be committed by the doing of a considerable number of severable things. Proof of any one or all of them constitutes proof of the crime charged. Individually they do not constitute separate offenses, but combine to constitute the single offense. Therefore, an indictment may allege in a single count that the defendant did one or all of the forbidden things, and the offense will be established by proof at the trial of any one of them. 1 Bishop's New Criminal Procedure, § 436 (1) (1895).

■ The indictment at bar, we think, satisfies the constitutional requirements that it inform the defendants of the offense with which they are charged in sufficient detail to permit them to prepare their defenses, and to plead the proceeding as a bar to a subsequent prosecution. Demonia v. State, 8 Storey 414, 210 A.2d 303 (1965).

■ There was no error, therefore, in ruling that each of the numbered paragraphs should be considered as separate and independent counts. We observe, however, that it would be preferable pleading to set out the varied charges in the form of separate formal counts.

■ Next, appellants argue that the State failed to prove the *corpus delicti*, i. e., that the victim's death was caused by the collision of his car with that of McGuigan.

No autopsy was performed on the body of the victim by the State Medical Examiner. He testified that he did not perform an autopsy for the reason that massive injury to the victim's skull was sufficient to establish the cause of death. Appellants base their argument on the following colloquy in cross-examination:

"Q. And what you are really saying, then, is that if nothing else caused the death, that the injury to the head caused the death?

"A. Yes, sir."

This is described by appellants as speculative testimony, in the absence of an autopsy, and accordingly, it is said, the State failed to sustain its burden of unequivocally proving the requisite causal connection between the acts of the appellants and the death of the victim.

Appellants ignore, however, the direct testimony of the doctor that the cause of death was "extensive injuries throughout the body, specifically crushing injuries of the head, face, chest, and abdomen." He further testified that the cause of death was so obvious that an autopsy was not required.

There obviously was no failure of proof on the State's part. It strains credulity to argue that a head-on collision between two cars, one traveling at a high rate of speed, resulting in the death of the driver of one was not the proximate cause of the death, because the State had not eliminated all other possible causes of death. The fact remains that the high-speed impact produced massive injuries to the victim and that he was killed. The State's proof was sufficient.

■ Finally, it is argued that error was committed in denying McGuigan's motion to exclude the State's testimony that he had been drinking beer prior to the accident in the absence of any evidence that at the time of the accident he was driving under the influence of alcohol. The State's evidence upon this point was that in the course of the evening McGuigan had consumed eight to ten beers and that the investigating officer noticed the odor of alcohol when he interviewed McGuigan at the hospital.

The argument is that no evidence of drinking is admissible unless the State produces evidence that the defendant was in fact under the influence at the time. We think, however, to the contrary. The State's case in this respect is weak, but we think it was not error to admit the evi-

dence for the consideration of the jury. Even if it were error, we think it was harmless error since there could have resulted no prejudice to McGuigan in view of the overwhelming nature of the State's whole case.

The judgments below are affirmed.