**Leonard B. JENKINS, Defendant Below, Appellant,**

**v.**

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Submitted Jan. 8, 1979.
Decided April 4, 1979.

---

84

Marsha Kramarck, Asst. Public Defender, Wilmington, for defendant below, appellant.

Michael F. Foster, Deputy Atty. Gen., Wilmington, for plaintiff below, appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

McNEILLY, Justice:

Defendant was convicted by a Superior Court jury of robbery in the first degree, 11 Del.C. § 832(1), assault in the first degree, 11 Del.C. § 613, and two counts of possession of a deadly weapon during the commission of a felony, 11 Del.C. § 1447.[1] On appeal, defendant contends that: the Trial Court erred in permitting the felony-weapon possession charges to go to the jury, the State having failed to prove the *corpus delicti* of the offenses; the Trial Court's supplementary instruction to the jury was coercive; and, there was insufficient evidence to sustain defendant's convictions on any of the charges. Finding no merit to defendant's arguments, we affirm.

### I

Defendant's convictions emanate from the robbery and beating of an attendant in a gas station located on Route 13, near Bear. As a result of the beating, the victim lapsed into a coma, rendering him unable to identify his assailant and to testify at trial. Apparently, there were no other eyewitnesses to the crime.

The State had no leads in the case for nearly a year. Then, while investigating a series of other robberies and murders, the police elicited information from suspects in those crimes which implicated defendant in the gas station robbery. At trial, the State introduced the testimony of three of those suspects, which revealed that defendant had made certain admissions about the crime. The State's key witness was Clifford Johnson, who testified for the State in exchange for a plea arrangement in connection with a murder charge pending against him arising out of an unrelated incident.

Briefly summarized, Johnson testified:

In the morning after the robbery, defendant came to Johnson's house and told Johnson that he (defendant) had "committed a robbery at the Gulf gas station the night before." Defendant also told Johnson how he "had forcibly took (sic) the money away from the boy, choked him, hit him in the head, pistol-whipped him, [and] kicked him." Defendant had brought with him a paper bag with some change and coin wrappers in it; both the bag and wrappers were bloodstained. Defendant also produced an automatic weapon which defendant said he had borrowed from a friend who used to be a guard at the Delaware Correctional Center. After their conversation, defendant drove Johnson in a maroon Pontiac Grand Prix to a store where Johnson exchanged the stolen change for bills. Later in the day, defendant drove Johnson to defendant's brother's house while defendant returned the weapon to its owner, a neighbor of defendant's brother.

Clifford Johnson's wife, Elizabeth, also testified and generally corroborated her husband's testimony concerning the events which had occurred at their home the morning after the robbery. She testified that "[defendant] told my husband that he had just robbed a store . . . [and] that the guy he had robbed, he messed . . . up real bad and . . . he didn't known if he was alive when he left." She further testified that defendant had in his possession an automatic weapon and a paper bag containing some change and coin wrappers. She also testified that the bag and wrappers appeared to be bloodstained.

Clifford and Elizabeth Johnson both identified the automatic weapon which the State produced as being the one which defendant had in his possession the morning after the robbery. Through the testimony

1.  11 Del.C. § 832 provides in pertinent part:
    "A person is guilty of robbery in the first degree when he commits the crime of robbery in the second degree and when, in the course of the commission of the crime . . ., he . . . .:

    (1) Causes physical injury to any person who is not a participant in the crime;"
    Compare *Davis v. State,* Del.Supr., 400 A.2d 292 (1979) and *United States ex rel. Stewart v. Redman,* D.Del., 470 F.Supp. 50 (1979).

of police, the State showed that the weapon was seized from the individual who allegedly had loaned it to defendant.

In addition, the State introduced the victim's medical records and the testimony of the surgeon, Dr. Amurao, who initially had examined the victim upon his entry to the emergency room. The doctor testified that the victim was deeply cyanosed and unconscious, and would respond only to painful stimulation; and, that the victim had noticeable swelling over the right side of his head and a laceration over his earlobe. The doctor's preliminary diagnosis was that the victim had suffered a cerebral contusion and a probable brain stem injury. The medical records confirm the diagnosis as a trauma to the victim's head.

Further linking defendant to the robbery were:

(1) A witness who testified that he entered the gas station at approximately 8:30 P.M. on the evening of the robbery, found the victim alive and well, and saw a 1973 or 1974 maroon Pontiac Grand Prix, occupied by a lone black male, parked in the station;

(2) A witness who testified that he entered the station approximately five to six minutes after the departure of the previous customer and found the victim unconscious; and

(3) A police officer who confirmed that defendant had owned a 1974 maroon Pontiac Grand Prix which he sold shortly before his arrest.

## II

Defendant first contends that the Trial Court erred in permitting the jury to consider the charges of possession of a deadly weapon during the commission of a felony, the State having failed to prove the *corpus delicti* of the offenses. Defendant argues that the only evidence as to the possession of a weapon was defendant's alleged confession and that this confession, without more, was insufficient as a matter of law to establish the *corpus delicti* of the weapon offenses.

■■■ A confession without independent proof of the *corpus delicti* is insufficient to convict an accused. *State v. Miller,* Del.O. & T., 32 A. 137 (1892); *State v. Hand,* Del.Gen.Sess., 41 A. 192 (1894). Defendant relies on *Opper v. United States,* 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954) and *Forte v. United States,* 68 U.S.App.D.C. 111, 94 F.2d 236 (1937) in support of the proposition that the State had to produce "substantial independent evidence" of the *corpus delicti* in addition to the defendant's confession in order to convict him. In *Nelson v. State,* Del.Supr., 123 A.2d 859 (1956), this Court rejected the Federal requirement of "substantial independent evidence" in favor of a more flexible rule requiring only "some" independent proof. In establishing that rule, the Court stated:

> "We see no reason to import into the administration of the criminal law a special measure of proof for the corroborating evidence required. Hair-splitting distinctions and confusion in the minds of jurors are apt to be the result. The defendant is sufficiently protected by requiring proof of the corpus delicti beyond a reasonable doubt upon all the evidence taken together, provided that some evidence apart from the confession is adduced." 123 A.2d at 862.

Thus, the amount of independent evidence tending to establish the *corpus delicti* need not be conclusive, so long as, when viewed with the confession, it establishes the *corpus delicti* beyond a reasonable doubt. *State v. Kehm,* Del.Super., 103 A.2d 781 (1954); *Johnson v. State,* Del.Supr., 338 A.2d 124 (1975).

■■■ In the present case, the threshold question is what is meant by the *corpus delicti* of the crime possession of a deadly weapon during the commission of a felony. Generally, *corpus delicti* refers to "the commission of a crime by somebody." *State v. Galvano,* Del.O. & T., 154 A. 461 (1930). The term *corpus delicti* usually does not include the perpetrator's identity; otherwise, *corpus delicti* would be synonymous with the whole of the charge. *See generally* 7 Wigmore, *Evidence* § 2072 (3d ed. 1940). Using this analysis, the *corpus de-*

*licti* of the felony-weapon possession charge appears to be: (1) that a felony was committed and (2) that the perpetrator of the felony possessed a deadly weapon at that time.

■■ Here, the commission of the felony is clear; the young attendant was brutally beaten during the course of a robbery. The more troublesome issue is whether the State produced some independent evidence linking possession of a deadly weapon to the perpetrator of the assault. Under these circumstances, absent any eyewitnesses' testimony, the only possible way to prove independently defendant's alleged possession of a handgun during the crime is to infer its use from the nature of the victim's injuries. Dr. Amurao testified that the victim, upon entering the emergency room, was deeply cyanosed and unconscious, and would respond only to painful stimulation. He further testified as to the swelling and lacerations about the right side of the victim's head. His preliminary diagnosis was that victim had suffered a cerebral contusion and a probable brain stem injury. The victim's medical records corroborate the doctor's testimony and confirm the diagnosis as a trauma to the victim's head. These injuries are consistent with a "pistol-whipping", which, by defendant's own confession, was inflicted by defendant upon the victim.[2] Dr. Amurao's testimony, coupled with the victim's medical records, constitutes some independent evidence of the *corpus delicti*, which, when viewed with defendant's confession that he "pistol-whipped" the victim, is sufficient to establish defendant's possession of the handgun during the assault and robbery.

■ Defendant argues further that the State failed to show that the weapon allegedly possessed by the defendant during the crime was, on the date of the crime, a

"deadly weapon" within the meaning of 11 *Del.C.* § 222(5).[3] Police testimony revealed that the weapon which defendant allegedly possessed during the crime was test fired and in operable condition nearly one and a half years after the crime. That testimony constituted some credible evidence tending to prove that the handgun was a "deadly weapon" on the date of the crime. *See* 11 *Del.C.* § 301. Absent any evidence to the contrary, the jury could reasonably have inferred that the weapon was operable on the date of the crime. Thus, the issue was properly before the jury, which in fact resolved the issue against the defendant.

### III

Defendant next contends that the Trial Court's supplementary instructions to the jury were coercive. He argues that the Court coerced the jury by referring to the cost and time factors involved in the case and by implicitly encouraging the minority to yield to the position of the majority.

■ Supplementary instructions which encourage the jury to reach a verdict, sometimes referred to as an "Allen charge" or "dynamite charge", are generally proper. *Brown v. State,* Del.Supr., 369 A.2d 682 (1976); *see also Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). In *Brown* this Court held that the danger of coercion "can be eliminated by having the charge include an admonition that each individual juror not surrender his or her honest convictions and not to return any verdict contrary to the dictates of personal conscience." 369 A.2d at 684.

At several points in its supplementary instructions, the Trial Court cautioned each juror to that effect, i. e., "to agree upon a verdict . . . without violating [his or her] individual judgment and conscience."

---

**2.** We note that the State failed to elicit from Dr. Amurao whether the victim's injuries were consistent with a "pistol-whipping." However, the lack of such testimony is not fatal since the doctor's opinion would not have bound the jury and could have been disregarded. In effect, then, it is the function of the jury and this Court to independently evaluate all the evi-

dence, including the medical evidence, in order to conclude whether the victim was "pistol-whipped."

**3.** 11 Del.C. § 222(5) in pertinent part provides:

"Deadly weapon" includes any weapon from which a shot may be discharged . . . .

Considering the supplementary instructions as a whole, we conclude that the charge was not coercive.

## IV

Finally, we address defendant's contention that there was insufficient evidence to sustain his convictions on any of the charges. The apparent basis for this contention is the questionable credibility of the State's witnesses who testified as to various statements made by defendant and to various transactions involving defendant.

 The credibility of witnesses is an issue for the jury to decide and, in this case, the jury believed the witnesses who linked defendant to the robbery and assault. But apart from defendant's confessions, there was circumstantial evidence which tended to incriminate defendant. Defendant was placed at the scene of the crime by testimony that defendant owned a maroon 1974 Pontiac Grand Prix on the date of the crime and that, just minutes prior to the crime, a customer of the gas station saw such a Grand Prix parked in the station and occupied by a lone black male. Furthermore, Clifford and Elizabeth Johnson's testimony was corroborated by the introduction into evidence of the weapon which defendant had allegedly possessed and which he returned to its owner. Finally, defendant's possession and use of the weapon during the assault and robbery is independently corroborated by both Dr. Amurao's medical testimony and the victim's hospital records.

We conclude that the evidence is sufficient to sustain defendant's convictions for robbery, assault, and two counts of possession of deadly weapon during the commission of a felony.

AFFIRMED.