**Clifford WRIGHT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 173, 2007.**

Supreme Court of Delaware.

Submitted: Jan. 9, 2008.

Decided: Feb. 11, 2008.

William A. Gonser, Jr., Andrew W. Gonser, Nancy Y. Gorman, Tanisha L. Merced, Gonser and Gonser, P.A., Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, constituting the court en banc.

STEELE, Chief Justice.

A Superior Court jury found Clifford Wright, defendant-appellant, guilty of two counts of delivery of cocaine. Wright makes two arguments on appeal. First, he argues that the trial judge erred by denying his motion to dismiss pursuant to the common law *corpus delicti* rule.[1] Second, Wright argues that the State failed to introduce sufficient evidence for the jury to find that the substance Wright delivered was, in fact, cocaine. Following initial briefing, we directed the parties to file supplemental briefs to address the evidence in the record, other than Wright's confession, that established that the substance delivered was actually cocaine.[2] We find that the testimony of Wright's uncharged co-conspirator, Cannon, independently established that Cannon provided Wright with cocaine and that Wright then delivered that cocaine to others. The evidence sufficiently supports Wright's convictions. Therefore, we **AFFIRM.**

## *FACTS*

Police arrested and charged Raheem Cannon with possession with intent to deliver cocaine and other related drug crimes in June 2006. On July 13, 2006, Detective Thomas Abram called Cannon to the New Castle County Police Headquarters for questioning about an incident that involved both Cannon and Wright. After Detective Abram assured Cannon that he would not be prosecuted for his statements, Cannon confessed to selling cocaine to Wright two different times on the evening of July 8, 2006.[3]

Cannon had been selling cocaine on a daily basis for about two years. He never used cocaine himself, but had used marijuana and pills before entering a drug diversion program. Wright, Cannon's roommate for a brief time, regularly bought cocaine from Cannon every other week for over a year.

On July 8, Cannon went to a friend's house for a "get together." Because "business [was] kind of slow," he called Wright to see if he "[knew] anybody looking for anything." After "a little bit of time," Wright called him back. Cannon testified that during the first call, Wright requested "a ¹⁄₁₆" or 1.6 grams of cocaine.[4] Cannon bagged the drugs for Wright before meeting him in the parking lot of Tailgates Bar in New Castle County. Cannon explained that he knew the substance he had placed in small baggies was cocaine because "[i]f you deal with it every day you can just tell by the texture and the smell and just the look of it." The cocaine that he bagged for

---

1. The *corpus delicti* rule is "the doctrine that prohibits a prosecutor from proving the *corpus delicti* [*i.e.* the body of the offense] based solely on a defendant's extrajudicial statements." BLACK'S LAW DICTIONARY 369 (8th ed. 2004).

2. We requested the parties to consider four cases: *Gooch v. Georgia,* 249 Ga.App. 643, 549 S.E.2d 724 (2001); *Reynolds/Herr v. Indiana,* 582 N.E.2d 833 (Ind.Ct.App.1991); *Slettvet v. Indiana,* 258 Ind. 312, 280 N.E.2d 806 (1972); and *Clifton v. Indiana,* 499 N.E.2d 256 (Ind.1986). In its briefing, the State also discussed *Smalley v. Indiana,* 732 N.E.2d 1231 (Ind.Ct.App.2000), a case which identified a conflict between *Reynolds/Herr*

and existing Indiana Supreme Court precedent.

3. On November 1, 2006, Cannon requested and entered into the drug diversion program after pleading guilty to one charge relating to his June arrest. The remaining charges were dropped. The State granted Cannon immunity on December 1, 2006 for the statements that he made to Detective Abram on July 13.

4. During trial, Cannon said that his code for this amount of cocaine was a "teenager." He had told Detective Abram on July 13 that Wright requested a "sixteen," which appears to be the same thing.

Wright was a mixture of powder and chunks and had a "fuelly smell" like gasoline. Cannon had received the cocaine from someone else. In the two years he had been selling cocaine, Cannon testified, no drug purchaser had ever complained that Cannon sold fake cocaine.

The cocaine that Cannon took to Wright had a street value that approached $80 to $100. After Wright paid Cannon $100 for the cocaine, Cannon went back to the "get together." Some time later, Wright called him and requested another $80 to $100 worth of cocaine, and Cannon made a second delivery to Wright at the same location. At this second delivery, Wright was standing with someone that Cannon did not know. Cannon assumed that person intended to buy the drugs from Wright. He acknowledged, however, that he never saw Wright give the drugs to anyone. The police never recovered any of the cocaine in question.

In light of Cannon's statement, Detective Abram questioned Wright about the cocaine purchases.[5] Before invoking his *Miranda* rights, Wright admitted to purchasing cocaine from Cannon two times on the evening of July 8, 2006. Wright also stated that he delivered to others both quantities of the drugs that he bought from Cannon. When Detective Abram asked whether he had also requested drugs for himself, Wright replied, "Not for me. I don't do it." The police arrested Wright and charged him with two counts of delivery of cocaine.

In exchange for immunity for his statements inculpating Wright, Cannon testified for the prosecution about his role in supplying Wright with cocaine at Wright's

trial. Before the State introduced Wright's confession to Detective Abram, Wright's counsel objected and moved for dismissal based upon the State's failure to establish the *corpus delicti* for either of the two counts of delivery of cocaine. Finding that Cannon's testimony furnished independent evidence of the *corpus delict*, the trial judge denied the motion. At the close of the State's case-in-chief, Wright's counsel moved for judgment of acquittal, claiming that the State failed to present sufficient evidence for a rational jury to conclude that the substance involved was indeed cocaine. The trial judge denied the motion, finding that Cannon's assertion that the substance was cocaine, given his drug dealing experience, sufficiently established the relevant element of the crime charged. The jury convicted Cannon of both charges. This appeal followed.

### DISCUSSION

We first note that the General Assembly changed the Delaware common law in 1996 when it enacted, and the Governor signed, S.B. 256, which added the following subsection (c) to 11 *Del. C.* § 301: "In any prosecution for any compound crime, including but not limited to first degree murder under § 636(a)(2) or (a)(6) of this title or for second degree murder under § 635(2) of this title, the *corpus delicti* of the underlying felony need not be proved independently of a defendant's extrajudicial statement."[6] The synopsis to the bill provided:

> The Delaware Supreme Court recently reversed a first degree murder conviction based upon the *corpus delicti* rule. *DeJesus v. State*, 655 A.2d 1180 (Del. 1995). In doing so, the Court adopted

---

**5.** Although the record is unclear, it appears that Wright was already at the station for an "unrelated investigation." After interviewing Cannon, the detective interviewed Wright

about both the July 8, 2006 incident with Cannon and the unrelated investigation.

**6.** 11 *Del. C.* § 301(c).

an interpretation of the rule that is applied in only a small number of states. This statute will change the Delaware *corpus delicti* rule to bring it in accord with the rule applied in a majority of states.[7]

■ The explanation of the *corpus delicti* rule in Delaware and the reasons why the "trustworthiness" position was consistent with our precedent do not represent the entirety of the *DeJesus* opinion.[8] In *DeJesus*, after examining the *corpus delicti* rule in Delaware, we then applied the Rule to the compound crime of felony murder.[9] Section 301(c), however, establishes that this approach may not be applied to

prosecutions "for any compound crimes."[10] Because this case does not include a compound crime, the charges here do not implicate section 301. Therefore, the "trustworthiness" approach to the *corpus delicti* rule, as explained by *DeJesus* and its progeny,[11] still applies. The "trustworthiness" approach to the *corpus delicti* rule remains the law in Delaware for all prosecutions that do not involve compound crimes.

■ To satisfy the policy behind our *corpus delicti* rule, the State must present "some evidence of the existence of a crime, independent of the *defendant's* confession, to support a conviction."[12] Recently, in *Bailey v. State*,[13] we noted that "[t]his

---

7.  70 Del. Laws 463, S.B. 256 (1995).

8.  *See DeJesus v. State*, 655 A.2d 1180, 1199–1202 (Del.1995) (part III.B).

9.  *Id.* at 1202. *See also id.* ("Were we to hold that, in a felony murder prosecution, the State must prove only the *corpus delicti* of homicide, but it need not establish independent evidence of the predicate felony, we would, in effect, relax the *corpus delicti* rule in its application to the most serious crimes."). We noted that the majority of states did not take this approach in felony murder cases. *See id.* at 1200. Section 301(c), as indicated, relaxes the rule in its application to compound crimes.

10.  11 *Del. C.* § 301(c). *Cf. DeJesus*, 655 A.2d at 1202 ("We perceive no convincing reason why our holding in [*Stokes v. State*, 402 A.2d 376, 382 (Del.1979)] as to connected crimes should not apply equally to compound crimes such as felony murder.").

11.  The "progeny" of the "trustworthiness" analysis espoused in *DeJesus* consists of only three Supreme Court cases, *Bailey v. State*, 2007 WL 1041748, at *2–3 (Del.); *Rogers v. State*, 2004 WL 2830898, at *1 (Del.); *Barlow v. State*, 2004 WL 1874699, at *3 (Del.); and two Superior Court cases, *State v. Wells*, 2004 WL 1551515 (Del.Super.); *State v. Bright*, 1998 WL 283391 (Del.Super.). Arguably, only *Bailey* (first degree murder by abuse or neglect) elaborates on the "trustworthiness" analysis. *Rogers* (a Rule 61 case from convic-

tions of first degree attempted robbery, first degree assault, wearing a disguise during the commission of a felony and possession of a firearm during the commission of a felony) and *Barlow* (first degree robbery and criminal impersonation) merely cite *DeJesus* for the proposition that the Delaware *corpus delicti* rule requires the prosecution to show some evidence of the crime apart from the defendant's confession. *Wells* (DUI and driving while license is suspended or revoked) and *Bright* (attempted murder and terroristic threatening) apply the *corpus delicti* rule to the facts of those cases. As indicated, none of these cases involved felony murder.

12.  *Bright v. State*, 490 A.2d 564, 569 (Del. 1985) (emphasis added). *See also DeJesus*, 655 A.2d at 1202 ("The purpose of the *corpus delicti* rule is not served by permitting the State to rely solely upon the defendant's single, extrajudicial confession to establish the *corpus delicti* of multiple crimes charged against him."); *Jenkins v. State*, 401 A.2d 83, 86 (Del.1979) ("[T]he amount of independent evidence tending to establish the *corpus delicti* need not be conclusive, so long as, when viewed with the confession, it establishes the *corpus delicti* beyond a reasonable doubt."). *Jenkins* notes that this Court has rejected the federal requirement of "substantial independent evidence" in favor of a more flexible rule requiring only "some" independent proof. *See id.* (quoting *Nelson*, 123 A.2d at 862).

13.  2007 WL 1041748 (Del.).

Court has never precisely defined the specific quantum of independent evidence required by the State to establish the *corpus delicti*."[14] In qualifying this observation, however, we also stated that the "defendant is sufficiently protected by requiring proof of the *corpus delicti* beyond a reasonable doubt upon all the evidence taken together, provided that some evidence apart from the confession is adduced."[15] "Once the State has produced some evidence of a crime, independent of the defendant's statement, then the policy behind the *corpus delicti* rule is satisfied and the confession may be admitted into evidence."[16]

■ Wright first argues that, at the time he raised his objection, the evidence of the alleged drug offenses failed to establish the *corpus delicti* of the crime charged. In cases involving these challenges, we have reviewed properly preserved objections to the sufficiency of the evidence establishing the *corpus delicti* under the same standard as a challenge to the sufficiency of the evidence.[17] To articulate precisely our standard of review *corpus delicti* challenges will be reviewed for whether a rational trier of fact, considering the evidence in the light most favorable to the prosecution, could find the essential elements of the offense beyond a reasonable doubt.[18]

■ We start by addressing whether the State established evidence, other than Wright's own confession, for either count of delivery of cocaine. To be convicted of delivery of cocaine, the State must prove that Wright delivered, or possessed with intent to deliver, cocaine.[19] Because "the more prudent approach is to apply the *corpus delicti* rule to any admission of the defendant that may tend to prove an element of the criminal offense,"[20] we must look at the circumstantial evidence the State presented through Cannon.

The State established, through Cannon's testimony, that Wright delivered cocaine. Cannon, as Wright's cocaine supplier, called Wright to see if Wright had some-

14. *Id.* at *3 (citing *Nelson v. State,* 123 A.2d 859, 862 (Del.1956)). *See also State v. Madura,* 1976 WL 168388, at *2 (Del.Super.) ("Without attempting to define a word as ambiguous as 'some', all that is required in the way of quantum of evidence *aliunde [i.e.* evidence from another source] the confession or admission is any evidence which tends to show the existence of the crime charged."), *aff'd,* 367 A.2d 650 (Del.1976) (Table)).

15. *Bailey,* 2007 WL 1041748, at *3 (quoting *Nelson,* 123 A.2d at 862).

16. *Bright,* 490 A.2d at 569.

17. *See Bailey v. State,* 2007 WL 1041748, at *4 (Del.Supr.); *Barlow v. State,* 2004 WL 1874699, at *3 (Del.Supr.); *DeJesus v. State,* 655 A.2d 1180, 1186 (Del.1995); *Shipley v. State,* 570 A.2d 1159, 1169–70 (Del.1990); *Jennings v. State,* 1988 WL 141156, at *2 (Del.Supr.); *Bright v. State,* 490 A.2d 564, 569 (Del.1985); *Stokes v. State,* 402 A.2d 376, 382 (Del.1979); *Jenkins v. State,* 401 A.2d 83, 87 (Del.1979); *Johnson v. State,* 338 A.2d 124, 126 (Del.1975); *Derrickson v. State,* 321 A.2d 497, 502 (Del.1974); *Henry v. State,* 298 A.2d 327, 329 (Del.1972); *McGuigan v. State,* 281 A.2d 480, 483 (Del.1971); *Nelson v. State,* 123 A.2d 859, 861–62 (Del.1956).

18. *See Poon v. State,* 880 A.2d 236, 238 (Del. 2005) (explaining the standard of review for sufficiency of the evidence claims); *Skinner v. State,* 575 A.2d 1108, 1121 (Del.1990) (same); *Davis v. State,* 453 A.2d 802, 803 (Del.1982) (same).

19. 16 *Del. C.* § 4751(a). The substance could also have been counterfeit cocaine. *See id. See also Murphy v. State,* 2006 WL 2095786, at *1 (Del.Supr.) ("Attempted Delivery of Cocaine constitutes an offense of the same grade and degree as Delivery of Cocaine.").

20. *State v. Wells,* 2004 WL 1551515, at *1 n. 4 (Del.Super.) (citing *State v. Madura,* 1976 WL 168388 (Del.Super.), *aff'd,* 367 A.2d 650 (Del. 1976) (Table)).

one to distribute or sell cocaine to further down the chain. Cannon testified that he called Wright and "asked him did he know anybody who that [sic] wanted anything...." Cannon testified that he then made two cocaine deliveries to Wright. On the second delivery, Wright had someone with him. After both deliveries, Wright paid Cannon for the drugs. Cannon believed it must have been another person's money because (Cannon believed) Wright would not personally have that much money on his own. Completely excluding any of Wright's admissions or statements and considering the evidence in the light most favorable to the State, Cannon's testimony sufficiently demonstrated that Wright actually delivered the cocaine Cannon had provided. Thus, the State established the *corpus delicti* for the "delivery" element of the crime of delivery of cocaine.

■ The second, and remaining, question is whether the State established through Cannon's testimony that Cannon provided Wright with cocaine or counterfeit cocaine. Because the State never recovered the substance and because Cannon never personally used the substance and could not testify about its physiological

effects, the defense argues that the State failed to establish independently that the substance was, in fact, cocaine. Thus, the question becomes whether, in the absence of chemical testing or expert testimony, a lay witness can identify an illegal substance sufficient to support a jury finding.

In *Gooch v. Georgia*,[21] the Georgia Court of Appeals found that lay testimony about the effects of methamphetamine that the defendant sold to the witnesses established sufficient circumstantial evidence to support a conviction. In that case, the witnesses testified that, upon ingesting the substance the defendant sold, they experienced similar physiological reactions as they had with other methamphetamine.[22] In *Clifton v. Indiana*,[23] the Supreme Court of Indiana agreed with this general principle, noting, "[t]o affirm a conviction based on this type of circumstantial evidence, the evidence must consist of the opinion testimony of someone sufficiently experienced with the drug."[24] Later Indiana cases, however, recognized that *Clifton* held that "opinion testimony from one experienced with a drug" included merely one type of permissible circumstantial evidence that may suffice for drug identification.[25] At

21. 249 Ga.App. 643, 549 S.E.2d 724 (2001).

22. *Id.* at 727.

23. 499 N.E.2d 256 (Ind.1986).

24. *Id.* at 258 (citing *Slettvet v. Indiana*, 258 Ind. 312, 280 N.E.2d 806 (1972)).

25. *Smalley v. Indiana*, 732 N.E.2d 1231, 1235 (Ind.Ct.App.2000) ("[W]e believe, in light of *Clifton*, that it is inaccurate to state that opinion testimony from one experienced with a drug *must* be produced for purposes of identifying a drug in the absence of chemical analysis. Rather, as *Clifton* held, other types of circumstantial evidence may suffice for drug identification as well."). *But see Reynolds/Herr v. Indiana*, 582 N.E.2d 833, 840

(Ind.Ct.App.1991) (finding insufficient evidence to corroborate that a second baggie of drugs was cocaine). *Smalley* rejects the reasoning in *Reynolds/Herr* because of its failure to consider the rule of *Clifton*. *Smalley*, 732 N.E.2d at 1235. *See also Reynolds/Herr*, 582 N.E.2d at 841–42 (Conover, J., concurring in part and dissenting in part):

I respectfully dissent from the majority's determination the evidence was insufficient as to Herr's conviction for possession of cocaine.... The proximity of the two baggies in Herr's purse, the proof one contained cocaine, and Overstreet's independent identification of the substance as being cocaine sufficiently establishes the *corpus delicti*, in my opinion. Herr's confession/statement against interest was properly admitted for the jury to consider. Substan-

least three federal Circuit Courts of Appeal have also accepted lay opinion testimony to identify the substance at issue.[26] These courts find that the testimony of someone experienced with a drug is one type of permissible circumstantial evidence that a jury may consider when determining a substance's identification.

■ We agree with those courts. A lay witness with familiarity and experience with the drug in question may testify and establish a drug's identity by factors other than the witness's personal use. Here, Cannon's lay opinion testimony was sufficient evidence from which a reasonable jury could infer the substance to be cocaine. Considering the evidence in the light most favorable to the prosecution, Cannon stated that he had bagged what he believed was cocaine based on its appearance, smell, and his two years of experience as a cocaine dealer. That testimony constituted independent evidence that the substance was in fact cocaine and, as a result, satisfied the *corpus delicti* rule. It was for the jury to determine the credibility of Cannon's testimony.[27]

Wright also argues, in the alternative, that the State never offered Cannon as an expert and that Cannon's experiences as a cocaine dealer were insufficient to establish the substance's identity. There appears to be some discrepancy among the states as to whether a drug dealer must be qualified as an expert witness.[28] We need not address this argument at this time, however, because it was not fairly presented to the trial judge and the interests of justice do not warrant its consideration.[29] Finally, Wright confessed that he sold cocaine.

In viewing the evidence in the light most favorable to the State, the jury could find Wright guilty of two counts of delivery of cocaine.

tial evidence supports the judgment on that score, in my opinion.

26. *See U.S. v. Dominguez*, 992 F.2d 678, 681 (7th Cir.1993) ("Circumstantial evidence establishing identification may include a sales price consistent with that of cocaine; the covert nature of the sale; on-the-scene remarks by a conspirator identifying the substance as a drug; lay-experience based on familiarity through prior use, trading, or law enforcement; and behavior characteristic of drug sales."); *U.S. v. Westbrook*, 896 F.2d 330, 336 (8th Cir.1990) ("Circumstantial evidence of a drug's identity may include opinion testimony of a witness who couples past use with present experience with the substance in question."); *U.S. v. Paiva*, 892 F.2d 148, 157 (1st Cir.1989) ("Although a drug user may not qualify as an expert, he or she may still be competent, based on past experience and personal knowledge and observation, to express an opinion as a lay witness that a particular substance perceived was cocaine or some other drug.").

27. *Poon v. State*, 880 A.2d 236, 238 (Del.2005) ("The fact finder is free to reject all or part of any witness's testimony. The fact finder need not believe even uncontroverted testimony.") (citations omitted).

28. *Compare, e.g., Brooks v. Florida*, 762 So.2d 879, 893 (Fla.2000) (citing cases and concluding that "upon establishment of a proper predicate, a drug dealer under these circumstances may express an opinion, in the form of expert testimony, regarding the identity of crack cocaine. We do not reach the issue as to any other possible controlled substance.") *with Arizona v. Saez*, 173 Ariz. 624, 845 P.2d 1119, 1124 (App.1992) ("The majority of jurisdictions addressing the issue have held that drug abusers or addicts may possess sufficient qualifications to testify about matters at issue in a narcotics prosecution.") *and New Mexico v. Rubio*, 110 N.M. 605, 798 P.2d 206, 208 (App.1990) ("Lay opinion concerning the identification of marijuana is admissible, and the qualifications of the witness go to weight and not admissibility. Askew's experience as a successful cocaine dealer qualified him to give his opinion that the substance was cocaine.") (citations omitted).

29. Supr. Ct. R. 8.

## *CONCLUSION*

NOW, THEREFORE, IT IS OR-
DERED that the judgment of the Superi-
or Court is **AFFIRMED.**