**Theodore NORMAN, Jr., Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 321, 2008.

Supreme Court of Delaware.

Submitted: Dec. 17, 2008.

Decided: March 4, 2009.

27.   *In re Asbestos Litig.*, 2007 WL 4571196, at   * 12.

Charles E. Whitehurst, Jr., Esquire, and Adam D. Windett, Esquire (argued), Charles E. Whitehurst, Jr., LLC, Dover, Delaware for Appellant.

John Williams, Esquire (argued), Department of Justice, Dover, Delaware for Appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

BERGER, Justice.

In this appeal, we consider, among other issues, whether police officers may identify marijuana without being qualified as expert witnesses. Appellant was convicted of murder and other offenses relating to a drug deal that went bad. At trial, police officers testified, as "lay" witnesses, that the substance found on appellant was marijuana. We hold that police officers must be qualified as experts before identifying a controlled substance. The error, however, was harmless beyond a reasonable doubt, and appellant's other arguments lack merit. Accordingly, we affirm the convictions.

## FACTUAL AND PROCEDURAL BACKGROUND

Raymond Rosa turned 17 on January 8, 2007. To celebrate, he and his friend, Justin Cauley, Justin's sister Nikkiya, and her boyfriend William Smith, decided to buy some marijuana and get high. Justin called Theodore W. Norman, Jr., and ordered a half ounce of the drug. Nikkiya drove the celebrants to a shopping center in Dover where they met Norman. Justin walked over to Norman's car, knocked on the window, and was told to "come in." Justin got in the car and Norman handed him two bags of marijuana. Before completing the deal, Justin wanted to turn the lights on in the car so he could see whether he was getting good quality marijuana. Norman refused that request, and Justin paid the agreed $60.

When Justin returned to Nikkiya's car, Smith looked at the bags and immediately said he wanted his money back. Accord-

ing to Justin the marijuana was brown, did not smell right, and was full of seeds. He identified the two bags at trial and testified that it was bad marijuana. Justin called Norman again, and told Norman that his friend wanted his money back. Norman refused and drove off.

Smith instructed Nikkiya to follow Norman. When Norman stopped in Carlisle Village, Nikkiya stopped behind him. The three males in Nikkiya's car got out and walked up to Norman's car. Norman rolled down the car window, and Smith again asked for his money back. Norman again refused. There is some dispute about what happened next. According to some witnesses, Smith punched Norman in the face. Other witnesses said Smith did not strike Norman. In either event, at that point in the altercation, Norman shot Smith in the chest. Norman fled before the police arrived. Smith died. The Delaware State Police searched Norman's residence the next morning. They found marijuana, a digital scale and plastic baggies. Norman was arrested one month later, and the arresting officer found two baggies of marijuana in Norman's pants.

Because of delay by the Medical Examiner's Office, the State failed to obtain an expert report identifying the seized substances as marijuana. The State also failed to seek assistance from the trial court in obtaining a timely report, and it did not seek an extension of the discovery cut-off date. As a result, the trial court excluded the report and the chemist's testimony. Lacking expert evidence, the State relied on several police officers to identify the substances they seized. Delaware State Police Trooper Jeremiah Lloyd testified that he removed two bags of "suspected marijuana" from Smith when he arrived at the crime scene. Lloyd also testified that he is familiar with the char-

acteristics of marijuana and that the substance in the two bags looked and smelled like marijuana. Detective Robert Daddia inspected the contents of the two baggies and testified that the substance had all the characteristics of marijuana. Detective Mark Papilli testified that, in his "opinion," the substance was marijuana.

Norman was convicted of second degree murder, four counts of possession of a firearm during the commission of a felony, two counts of reckless endangering, possession with intent to deliver a controlled substance, and related drug charges. He was sentenced to a total of 31½ years at Level V followed by various levels of probation. This appeal followed.

## DISCUSSION

█ Norman raises two issues on appeal. First, he contends that the State violated his due process rights by failing to disclose exculpatory evidence. Specifically, he says that the State withheld two facts—that, at the time of the shooting, Norman's car window was rolled down about 6–8 inches, and that Smith was standing upright. Norman assumes that the State obtained this information from an undisclosed, third statement given by Justin. He argues that he could have used these facts to undermine Justin's credibility, if the undisclosed third statement was inconsistent with Justin's earlier statements. Alternatively, Norman argues that he could have used the information to obtain an expert report on the trajectory of the gun shot. Norman theorizes that the expert would have established that the State's description of the shot was "physically impossible."

█ In *Brady v. Maryland*[1] the United States Supreme Court held that the

1.  373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

State must disclose evidence favorable to a defendant's case on request. There are three elements to a *Brady* violation:

> The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State; either willfully or inadvertently; and prejudice must have ensued.[2]

In evaluating whether there was prejudice, "a defendant need only show that the suppressed evidence 'undermines [the] confidence in the outcome of the trial.'"[3]

Norman's *Brady* argument fails at several levels. First, the State denies that there is any statement from Justin that was not disclosed. Norman assumes that there must be an undisclosed statement because, in his two earlier statements, Justin never mentioned that the window was partly open or that Smith was standing upright. But there were two other witnesses to the shooting who could have provided the information. In addition, the car window had to have been rolled down to some extent because the bullet did not break the window. Thus, there is no reason to disbelieve the State's representation that no undisclosed *Brady* material existed.

Second, it is not at all clear that the purported statement, if it did exist, was favorable to Norman. It is difficult to imagine how it would help impeach Justin's testimony, inasmuch as Justin had not given a prior statement addressing whether the window was down or Smith was standing. Alternatively, if Norman had an expert witness establish that the window had to be lower or higher than described in order to hit Smith, that information would not help Norman's self-defense argument. Norman wanted the jury to accept the disputed fact that Smith had punched him through the open window before Norman shot Smith. But, even if Norman established that he had been punched, that fact would not assist his defense. Norman never presented the jury with any evidence that he believed deadly force was necessary to protect himself.[4] Thus, with or without an initial punch, Norman was not justified in killing Smith.

Finally, for many of the same reasons, Norman has failed to demonstrate that he suffered any prejudice. Multiple witnesses testified that Norman shot Smith while Norman was sitting in his car and Smith was outside the car. New information about the trajectory of the bullet would not undermine our confidence in the second degree murder guilty verdict.

■ Norman's second argument has merit. He contends that the police officers were not qualified to opine that the various seized substances were marijuana. The State needed the officers' opinions because the State was unable to obtain the chemist's report in a timely fashion and the trial court excluded the report. Three police officers testified that the seized substances either were marijuana or had the characteristics of marijuana. They were not offered as expert witnesses and the trial court did not rule that they were qualified as experts to identify the substance. Instead, the officers were allowed to testify as lay witnesses, based on their

---

2. *Atkinson v. State*, 778 A.2d 1058, 1063 (Del. 2001).

3. *Ibid.* (Quoting *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).

4. 11 *Del. C.* § 464(c).

knowledge and experience. The State convinced the trial court that the recent decision in *Wright v. State*[5] authorized them to identify controlled substances.

The State's reliance on *Wright* is misplaced. In that case, we analyzed the *corpus dilecti* rule to determine whether the State had provided sufficient evidence, beyond the defendant's confession, to support a conviction of delivery of cocaine. The police never recovered any of the cocaine, but another dealer was given immunity and he testified about the drug transaction. The dealer who supplied the cocaine to the defendant testified that the substance was, in fact, cocaine. He based that statement on the fact that he had been selling cocaine for two years; he knew the texture and smell of cocaine; and his customers never complained that they had been sold fake goods.

■ In *Wright* this Court recognized the general principle that a "lay witness with familiarity and experience with the drug in question may testify and establish the drug's identity...."[6] But the Court never held, or suggested, that anyone who is familiar with drugs may give lay opinions. Under D.R.E. 701, a lay witness may give an opinion only if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue and (c) *not based on scientific, technical or other specialized knowledge within the scope of Rule 702.*" Opinions that are based on technical or specialized knowledge may be offered only by witnesses who are qualified as experts under D.R.E. 702.

The witness in *Wright* was a drug dealer who was familiar with cocaine because he bought and sold the drug. The witness handled cocaine, weighed it, packaged it, and distributed it on a daily basis. The police officers' familiarity with controlled substances, by contrast, comes from their training and their specialized experience in apprehending criminals who are involved in drugs. In *Seward v. State*,[7] this Court held that police officers could not testify, as lay witnesses, that a substance was cocaine. The *Seward* court noted that, although the police officers were offered as lay witnesses who could identify cocaine based on their common knowledge, the officers actually were testifying as experts without being qualified. The same thing happened in this case.[8]

■ Although the officers should not have been allowed to identify the marijuana they seized from Norman, we are satisfied that the error was harmless beyond a reasonable doubt.[9] Justin testified that the substance Norman sold on the night of the shooting was marijuana. Terrence Robbins, who is Norman's friend and was a passenger in the car, testified that Norman sold marijuana. Corporal David S. Hake, Jr., who was properly qualified as an expert, testified about how marijuana is packaged, sold and injested. He then opined that the items seized from Norman's bedroom were consistent with the sale of marijuana. In sum, the circum-

5.   953 A.2d 188 (Del.2008).

6.   953 A.2d at 195.

7.   723 A.2d 365 (Del.1999).

8.   Norman also argued that the State should not be allowed to circumvent its obligation to produce its expert evidence by using police officers as "lay" witnesses. We agree. Police officers are respected authority figures whose opinions are likely to be given weight even if they are not qualified as experts. As a result, trial courts should be circumspect in allowing them to offer lay opinions.

9.   *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

stantial evidence that Norman sold marijuana in plastic baggies was sufficient to support a conclusion that the baggies seized from Norman, the victim, and Norman's bedroom contained marijuana.

## CONCLUSION

Based on the foregoing, the judgements of the Superior Court are hereby AFFIRMED.