## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE          )
                                    )
                                    )
v.                           )     Cr.A. No.: 1503008254
                                    )
                                    )
RANDOLPH LUCAS,         )
                                    )
Defendant.                  )
                                    )

Submitted: August 3, 2015
Decided: September 2, 2015

John S. Grimm, Esquire
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
  *Attorney for the State of Delaware*

Marc J. Wienkowwitz, Esquire
1716 Wawaset Street
Wilmington, DE 19806
  *Attorney for Defendant*

## DECISION AFTER TRIAL

**RENNIE, J.**

## INTRODUCTION

On March 14, 2015, Randolph Allen Lucas ("Defendant") was arrested and charged with Possession of Marijuana with an Aggravating Factor, in violation of 16 *Del. C.* § 4764(a), and Failure When Moving Right, Left or Turning to Signal Continuously Not Less Than 300 Feet, in violation of 21 *Del. C.* § 4155(b). At trial on July 27, 2015, the Court heard testimony from Detective Matthew Rosaio ("Detective Rosaio") of the Wilmington Police Department ("WPD") and Defendant. At the conclusion of trial, the Court reserved its decision and ordered supplemental briefing. This is the Court's final decision after trial.

## FACTUAL BACKGROUND

On March 14, 2015, Detective Rosaio was patrolling the City of Wilmington when he saw Defendant driving a white Nissan, traveling east on the 1400 block of West 3rd Street. Detective Rosaio testified that he saw Defendant drive his car from the center of the road to the right side of the road in an attempt to park, without activating his turn signal. Contrary to Detective Rosaio's testimony, Defendant testified that he used his turn-signal when parking, and stated that the turn-signal was still activated once he parked.

Detective Rosaio testified that upon making contact with Defendant, he immediately detected the smell of fresh marijuana, and that when questioned, Defendant stated that he had just finished smoking marijuana. Defendant did not, however, state that he had marijuana on his person or in his car. Detective Rosaio then removed Defendant from the vehicle, and performed a search of the vehicle, which yielded two sandwich bags containing a substance that Detective Rosaio deemed to be marijuana.[1] Detective Rosaio determined that the substance was marijuana after he smelled a recognizable pungent odor emanating from the substance. Defendant did not

---

[1] Detective Rosaio stated that the substance appeared to be the buds from a marijuana plant (marijuana nuggets), which is the purest form of marijuana.

make any statements as to what the substance was or how he came to possess the substance. Detective Rosaio placed Defendant under arrest, and took him to the station. While collecting inventory, Detective Rosaio found a large sum of money in Defendant's right pocket, and a canine sniff of the currency resulted in a positive alert to the presence of a controlled dangerous substance. Detective Rosaio subsequently utilized a NARK #8 field test kit, and he testified that the substance tested positive for marijuana.

At the end of trial, Defendant argued that the State did not meet its burden in producing sufficient evidence that identified the substance seized from Defendant's car as marijuana. The State argued that it did meet its burden because it produced Detective Rosaio as an expert in the area of identification of controlled substances. Defendant objected to Detective Rosaio's testimony and argued that the State had not produced sufficient evidence to qualify him as an expert.

## DISCUSSION

### A. Defendant's Charge of Failure to Signal

Under 21 *Del. C.* § 4155(b), "[a] signal of intention to turn or move right or left when required shall be given continuously during not less than the last 300 feet or more than ½ mile traveled by the vehicle before turning." In this case, Defendant testified that he activated his turn signal when parking, however, Detective Rosaio testified that he saw Defendant drive his car from the center of the road to the right side of the road in an attempt to park without activating his turn signal. After weighing the credibility of both witnesses, the Court finds that the State has met its burden in proving that Defendant failed to activate his turn signal while parking, in violation of 21 *Del. C.* § 4155(b).

3

## B. Defendant's Charge of Possession of Marijuana

The dispositive issue before the Court is whether the State has produced sufficient evidence to prove beyond a reasonable doubt that the substance seized by Detective Rosaio was marijuana. The State did not provide a medical examiner's report, or any corroborating evidence on the identification of the substance at issue. Instead, the State relied solely on the testimony of Detective Rosaio, and proffered Detective Rosaio as an expert in the area of identification of controlled substances.

As an expert witness, Detective Rosaio's testimony is governed by Delaware Rule of Evidence 702 ("D.R.E. 702"). Pursuant to D.R.E. 702, expert testimony is admissible if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."[2]

D.R.E. 702 tracks Federal Rule of Evidence 702, and the Delaware Supreme Court has adopted *Daubert v. Merrell Dow Pharmaceuticals, Inc.*[3] as the correct interpretation of D.R.E. 702.[4] Consistent with *Daubert*, D.R.E. 702 "'imposes a special obligation upon a trial judge to ensure that any and all scientific testimony . . . is not only relevant, but reliable.'"[5] In order for expert testimony to be reliable, it "'must be supported by appropriate validation—i.e., good grounds, based on what is known.'"[6] Expert testimony is validated when it pertains to valid, scientific knowledge.[7] Under *Daubert*, when determining whether expert testimony is reliable and validated, the Court should consider the following factors:

---

[2] D.R.E. 702.
[3] 509 U.S. 579 (1993).
[4] D.R.E. 702 cmt. *See also M.G. Bancorporation, Inc. v. Le Beau,* 737 A.2d 513, 522 (Del.1999).
[5] *Bowen v. E.I. DuPont de Nemours & Co.,* 906 A.2d 787, 794 (Del. 2006) (*citing M.G. Bancorporation,* 737 A.2d at 521 (citations omitted)).
[6] *Tumlinson v. Advanced Micro Devices, Inc.,* 106 A.3d 983, 990 (Del. 2013) (*citing Daubert,* 509 U.S. at 597).
[7] *Id.*

(1) whether a theory or technique has been tested;

(2) whether it has been subjected to peer review and publication;

(3) whether a technique had a high known or potential rate of error and whether there are standards controlling its operation; and

(4) whether the theory or technique enjoys general acceptance within a relevant scientific community.[8]

Delaware jurisprudence further requires the Court to apply a five-step test to determine the admissibility of scientific or technical expert testimony, in which the Court must decide whether:

(1) the witness is qualified as an expert by knowledge, skill, experience, training, or education,

(2) the evidence is relevant,

(3) the expert's opinion is based upon information reasonably relied upon by experts in the particular field,

(4) the expert testimony will assist the trier of fact to understand the evidence or determine a material fact in issue, and

(5) the expert testimony will not create unfair prejudice or confuse or mislead the jury.[9]

If the testimony submitted to the Court does not satisfy the requirements needed to qualify as expert testimony, then the Court may consider the testimony as lay opinion. Additionally, "when the scientific evidence is obtained from the use of a scientific instrument, expert testimony is necessary to establish the reliability and accuracy of the instrument."[10] "'The party seeking to introduce the expert testimony bears the burden of establishing its admissibility by a preponderance of the evidence.'"[11]

First, the Court will address the admissibility of the NARK #8 field test result. Although Detective Rosaio gave a cursory explanation of how he administered the field test, he did not describe the process with specificity so as to demonstrate the reliability and accuracy of the

---

[8] *Bowen,* 906 A.2d at 795 (*citing Daubert,* 509 U.S. at 590-94).

[9] *Sturgis v. Bayside Health Ass'n Chartered,* 942 A.2d 579, 584 (Del. 2007) (*citing Bowen,* 906 A.2d at 795).

[10] *Tolson v. State,* 900 A.2d 639, 645 (Del. 2006)

[11] *Sturgis,* 942 A.2d at 584 (*quoting Bowen,* 906 A.2d at 795).

NARK filed test.[12] Similarly, while Detective Rosaio testified that the NARK kits have a high probability of precision, he could not state a known error rate of the NARK kits' reliability.[13] Moreover, the record is void of any evidence that the NARK kit has been tested or has generally been accepted as a reliable method of identifying controlled substances in the law enforcement community. Therefore, without more corroborating evidence as to the reliability and accuracy, the result of the field test is inadmissible as scientific evidence that the substance seized by Detective Rosaio was marijuana.

The Court will now address the admissibility of Detective Rosaio's testimony as an expert witness. The State proffered Detective Rosaio as an expert in the area of identification of controlled substances based on his knowledge, training and experience. Detective Rosaio testified that when he received his police training, he learned how to identify drugs and the various ways in which individuals may use certain drugs and narcotics. Additionally, over the course of Detective Roasio's five-and-one-half year tenure with WPD, he has attended several trainings and courses on drugs and drug use.[14] In particular, Detective Rosaio attended a course at the University of Delaware where he learned of the newest forms of marijuana and trends in using marijuana. Detective Rosaio testified that he has arrested numerous people for drug-related offenses, and has seized close to one-hundred pounds of marijuana over the course of his career. After seizing the substance from Defendant, Detective Rosaio determined that the substance was marijuana after smelling a recognizable pungent odor emanating from the

---

[12] Detective Rosaio testified that he took a small sample of the seized substance and placed it into a plastic vile that contains another plastic vile filled with a chemical agent. Defendant Rosaio then shook the viles and the inner vile broke and the chemical agent changed to a "purple-ish blue" color, which Defendant Rosaio explained, meant that the substance tested positive for the presence of marijuana.

[13] While Detective Rosaio offered his own subjective opinion of the NARK kit's reliability, he was unable to provide any objective opinion as to its reliability. As such, the record is void of any evidence that would show that the NARK kit as a generally acceptable method for identifying marijuana.

[14] This training includes U.S. Marshall training, FBI training, and officer safety training.

6

substance. He testified that he recognized the odor based on his knowledge, training and experience.

At trial and in its post-trial briefing, the State contended that Detective Rosaio's expert testimony, without more, was sufficient to establish that the substance seized from Defendant was in fact marijuana. Defendant, however, has challenged whether the State produced evidence sufficient to establish Detective Rosaio's qualifications to even testify as an expert witness. While the State properly relied on *Wright v. State*[15] and *Norman v. State*[16] in support of its argument, the State has not produced any argument on whether Detective Rosaio properly testified as an expert witness.

Although the Court finds Detective Rosaio to be a credible witness, the Court finds that the State has not produced enough evidence that establishes Detective Rosaio's qualifications to testify as an expert. Detective Rosaio provided general background information on his knowledge and training in the area of identification of controlled substances. In addition, he testified that he took one course at the University of Delaware, but he did not provide any specific testimony as to what his training encompassed, when he was trained, or who trained him. Without more corroborating evidence as to Detective Rosaio's specific qualifications, the Court is unable to conclude that Detective is qualified to testify as a witness in the area of identification of controlled substances. Accordingly, the Court will consider Detective Rosaio's testimony as lay opinion.

Under D.R.E. 701, a lay witness may give an opinion if the opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue and (c) not based on scientific, technical or other

---

[15] 953 A.2d 188 (Del. 2008).
[16] 968 A.2d 27, 31 (Del. 2009).

7

specialized knowledge within the scope of Rule 702."[17] The Delaware Supreme Court has found that "[a] lay witness with familiarity and experience with the drug in question may testify and establish a drug's identity,"[18] however, a police officer cannot testify as a lay witness when identifying a substance as a drug.[19] In *Norman v. State*, the Court highlighted this distinction by comparing a police officer's knowledge to that of a drug dealer.[20] Unlike a police officer's familiarity, a drug dealer who is familiar with a particular drug is familiar with it because he buys, handles and sells the drug.[21] In other words, he is testifying as a true lay witness who is familiar with and has the ability to identify a drug based on his handling of that drug. A police officer's "familiarity with controlled substances, by contrast, comes from [his] training and [his] specialized experience in apprehending criminals who are involved in drugs."[22] Such testimony would violate D.R.E. 701(c), and therefore cannot constitute proper lay opinion.[23] Essentially, when a police officer identifies a drug while giving lay testimony, he "actually [is] testifying as [an] expert[] without being qualified."[24]

Consequently, the Court will not consider Detective Rosaio's lay opinion as to the identity of the substance seized from Defendant. Without proper expert testimony, a medical examiner's report, or other valid corroborating evidence, this Court cannot conclude, beyond a reasonable doubt, that the substance seized by Detective Rosaio was indeed marijuana.

---

[17] D.R.E. 701.
[18] *Wright*, 953 A.2d at 195.
[19] *Norman*, 968 A.2d at 31.
[20] *Id.* (comparing the lay witness proffered in *Wright v. State*, 953 A.2d 188 (Del. 2008) with the lay witness proffered in *Norman*).
[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* (citing *Seward v. State*, 723 A.2d 365 (Del. 1999).

## CONCLUSION

For the foregoing reasons, the Court finds Defendant Randolph Lucas **GUILTY** of Failure When Moving Right, Left or Turning to Signal Continuously Not Less Than 300 Feet, in violation of 21 *Del. C.* § 4155(b).

The State has not met its burden of proving beyond a reasonable doubt that Defendant Randolph A. Lucas was in possession of marijuana. Accordingly, the Court finds Defendant Randolph Lucas **NOT GUILTY** of Possession of Marijuana with an Aggravating Factor, in violation of 16 *Del. C.* § 4764(a).

This Judicial Officer shall retain jurisdiction of this case and will schedule it forthwith for sentencing.

**IT IS SO ORDERED this 2nd day of September, 2015.**

_____
Sheldon K. Rennie,
Judge